OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


     The State ex rel. Ohio Department of Health, Appellant, v.
Sowald et al., Appellees.
     [Cite as State ex rel. Ohio Dept. of Health v. Sowald
(1992),     Ohio St.3d    .]
Courts -- Judgments -- R.C. 2323.51 refers to trial court
     judgments in civil actions, not to appellate judgments --
     R.C. 2323.51 does not contemplate awarding attorney fees
     for defending appeals of civil actions -- R.C. 119.092,
     applied.
     (No. 90-2071 -- Submitted October 13, 1992 -- Decided
December 14, 1992.)
     Appeal from the Court of Appeals for Franklin County, No.
88AP-1171.
     The Ohio Department of Health ("ODH"), appellant, appeals
the denial of a writ in mandamus that would compel Heather G.
Sowald, appellee, an impartial hearing officer, to vacate her
award of attorney fees to Albert's Nursing and Residential
Facility, Inc. ("Albert's"), intervenor-appellee.
     Albert's operates an intermediate care facility for
mentally retarded persons under a license with the state of
Ohio.  The license is reviewable by ODH.
     In December 1986 and March 1987, ODH conducted an annual
certification survey of Albert's and detected forty individual
Medicaid deficiencies.  On May 28, 1987, Ronald F. Fletcher,
M.D., Director of ODH, sent a notice to Albert's advising it of
his proposal to decertify Albert's.  He also advised Albert's
that it could request an informal reconsideration conference.
He further informed Albert's that ODH would afford Albert's a
formal hearing if Albert's did not request a conference or if
the informal process did not result in a renewal of Albert's
certificate.  Finally, he informed Albert's that the
decertification would become final only after the formal
hearing and his issuance of an adjudication order.
     Albert's applied for the informal reconsideration.  An
informal hearing was held on August 11, 1987, by impartial
hearing examiner Ronald B. Noga.  Noga issued a decision on
October 14, 1987, in which he found that twenty-six of the
original forty deficiencies had been corrected, nine of the

deficiencies were being corrected, and five had not been corrected.  He further found that the five uncorrected deficiencies did not jeopardize the residents' health and safety but did affect their active treatment, and that the correction of these deficiencies was necessary for recertification.  Accordingly, he recommended that the director decertify the facility.

On October 26, 1987, the director notified Albert's of his agreement with Noga's recommendation.  The director advised Albert's that ODH would conduct an evidentiary hearing, if timely requested, before issuing an adjudication order.

Albert's applied for a formal evidentiary hearing.  On January 13-15, 19-20, 25-26, and February 8-9, 1988, Sowald conducted the evidentiary hearing.  In the meantime, on December 14, 1987, ODH conducted a resurvey and cited eight deficiencies.  Sowald considered only these citations in her decision.

Sowald issued a decision on March 29, 1988.  In it, she found that Albert's had come into substantial compliance with the certification provisions and recommended renewal of the certificate.  She found that the two deficiencies that remained uncorrected did not jeopardize the patients' health or safety or seriously limit the facility's capacity to give adequate care.

On April 18, 1988, the director issued an adjudication order approving Sowald's recommendation.  Therefore, he renewed Albert's certification, commencing January 13, 1988 and expiring August 31, 1988.

On May 17, 1988, Albert's applied for attorney fees of $30,923.75 under R.C. 119.092.  Albert's claimed that ODH was not substantially justified in initiating the matter.

On October 31, 1988, Sowald granted the motion in part. She divided the matter into two adjudications: the informal phase and the formal phase.  She concluded that ODH was substantially justified in pursuing the case in the first phase, which ended after the December 1987 resurvey.  However, she decided that the findings of the surveyors in the December 1987 and January 1988 resurveys, which ODH had also conducted, were not substantial enough to justify the decision to go forward with the evidentiary hearing, which she declared to be the second phase.  Thus, Sowald ruled that Albert's was entitled to attorney fees.  However, she found that Albert's lawyers billed excessively for unreasonably protracted cross-examination and excessive witness preparation. Accordingly, she awarded Albert's only $17,500.

Since R.C. 119.092 did not then provide ODH an appeal of this order, it filed a complaint for a writ of mandamus in the Court of Appeals for Franklin County.1  It asked the court to order Sowald to vacate her award of attorney fees and to comply with R.C. 119.092 by denying the motion for attorney fees. Albert's was allowed to intervene as a respondent, and it moved, under R.C. 2323.51, for additional attorney fees for having to respond to the mandamus complaint.

The court of appeals' referee essentially agreed with Sowald's decision to divide the case into two phases.  She determined that the matter was "initiated" with the December 1987 and January 1988 resurveys.  She concluded that Sowald had

not abused her discretion in finding that ODH was not substantially justified in initiating the matter in controversy. She also concluded that mandamus was not a civil action and, consequently, R.C. 2323.51 did not apply to mandamus cases. Accordingly, the referee recommended denial of the writ and denial of the motion for attorney fees.

The court of appeals adopted the report and recommendation of the referee. The court stated:

"Where the statutory and regulatory scheme contemplate[s] an ongoing process whereby a licensee is permitted, and apparently expected, to continue to make corrections and to upgrade the facility during a certification renewal process, and it is apparent the issues and evidence to be presented at an adjudication hearing may well be considerably different from those at the outset of the administrative process, it is the decision to go forward with an adjudication hearing which must be substantially justified, even though such decision occurs late in the administrative process. * * *"

The court concluded that ODH was not substantially justified in proceeding with the adjudication hearing and denied the writ. It also found that Albert's could not receive attorney fees because ODH's conduct in bringing the mandamus action was not frivolous.

ODH appealed this judgment to this court. Albert's did not appeal the decision denying the motion for attorney fees, but filed a motion with this court for attorney fees in defending the appeal.

The cause is now before this court upon an appeal as of right.

Lee I. Fisher, Attorney General, and Lawrence D. Pratt, Assistant Attorney General, for appellant.

Lee I. Fisher, Attorney General, and Barbara A. Serve, Assistant Attorney General, for appellee Sowald.

Roth & Rolf Co., L.P.A., Sheila P. Cooley and Ruthanne Murray, for appellee Albert's Nursing and Residential Facility, Inc.

Per Curiam.
                A. Attorney Fees Under R.C. 119.092
R.C. 119.092 provides in part:

"(B)(1) Except as provided in divisions (B)(2) and (F) of this section, if an agency conducts an adjudication hearing under this chapter, the prevailing eligible party is entitled, upon filing a motion in accordance with this division, to compensation for fees incurred by that party in connection with the hearing. * * *

"(2) Upon the filing of a motion under this section, the request for the award shall be reviewed by the referee or examiner who conducted the adjudication hearing or, if none, by the agency involved. In the review, the referee, examiner, or agency shall determine whether the fees incurred by the prevailing eligible party exceeded one hundred dollars, whether the position of the agency in initiating the matter in controversy was substantially justified, whether special circumstances make an award unjust, and whether the prevailing eligible party engaged in conduct during the course of the

hearing that unduly and unreasonably protracted the final resolution of the matter in controversy. * * *" (Emphasis added.)

ODH argues that the matter in controversy was not inititaed by the December 1987 resurvey, but by either the May 28, 1987 notice of opportunity for informal or formal hearing, or the October 26, 1987 notice of opportunity for hearing. Furthermore, it argues that it had a reasonable basis in law and fact to initiate the adjudication and that Sowald abused her discretion by finding that it was not substantially justified.

Sowald, on the other hand, argues that, in evolving cases such as this one, initiating the matter in controversy can occur when the agency decides to proceed with the formal evidentiary hearing after the facility has been given a chance to correct the deficiencies. Albert's maintains that the final decision to go forward with the evidentiary hearing, in the combined federal and state regulatory scheme establishing an ongoing certification renewal process, is the act of initiating the matter in controversy.

According to Webster's Third New International Dictionary (1986) 1164, "initiate" means:

"1a. To begin or set going: make a beginning of: perform or facilitate the first actions, steps, or stages of * * *."

Black's Law Dictionary (6 Ed. 1990) 784, defines "initiate" as:

"Commence; start; originate; introduce; inchoate. * * *"

Thus, "initiate" means to commence an action, not continue a proceeding that has already begun, as found by the court of appeals. Moreover, Black's Law Dictionary, supra, at 978, defines "matter in controversy" as "[s]ubject of litigation; matter on which action is brought and issue is joined and in relation to which, if issue be one of fact, testimony is taken. * * *" The first rule of statutory interpretation is to give effect to the plain meaning of the words employed in the statute. State ex rel. Foster v. Evatt (1944), 144 Ohio St. 65, 104-105, 29 O.O. 4, 20, 56 N.E.2d 265, 282; R.C. 1.42. Consequently, the matter in controversy, the decertification of Albert's, commenced when ODH first took action to decertify Albert's.

The process could have begun with the May 28, 1987 letter, in which the director first notified Albert's of deficiencies and advised it of formal and informal procedures, or the October 26, 1987 letter, in which the director notified Albert's of his decision, after the informal review, to decertify Albert's and of its right to a formal evidentiary hearing. In this case, the latter is the point at which ODH initiated the matter in controversy.

No adjudication order, which is the determination by the highest agency authority on the rights, duties, privileges, benefits or relationships of a specified person, is valid unless the agency affords the individual an opportunity for a hearing. R.C. 119.06; R.C. 119.01(D). R.C. 119.07 prescribes the manner in which hearings are afforded. This process begins with the issuance of a notice informing the individual of his right to a hearing. Consequently, the notice that leads directly to decertification after the opportunity for a formal

evidentiary hearing is afforded initiates the matter in controversy.

In the instant case, the decision to proceed with the hearing after the resurveys in December 1987 and January 1988, the point of initiation found by the court of appeals, was, as that court described, a continuation of the process, not its initiation. We conclude that the October 26 letter initiated the matter in controversy because it notified Albert's of the decertification and delivered the notice that led directly to the formal evidentiary hearing. Since appellees concede, Sowald explicitly and Albert's implicitly, that ODH's position was substantially justified when it issued the October 26 letter, Sowald had a clear legal duty to deny the request for attorney fees. Consequently, we reverse the court of appeals' judgment and issue the writ.

                    B. Attorney Fees Under R.C. 2323.51

R.C. 2323.51 states in part:

"(B)(1) Subject to divisions (B)(2) and (3), (C), and (D) of this section, at any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action, the court may award reasonable attorney's fees to any party to that action adversely affected by frivolous conduct. The award may be assessed as provided in division (B)(4) of this section."

Albert's does not contend that it should have been awarded fees for answering the mandamus action at the court of appeals; it did not appeal that court's judgment. It claims, nevertheless, that we may award it attorney fees for defending this appeal if it applies for fees within twenty-one days of our entry of judgment on the appeal.

"An action in mandamus is a civil action." State ex rel. Wilson v. Preston (1962), 173 Ohio St. 203, 19 O.O.2d 11, 181 N.E.2d 31, paragraph one of the syllabus. Civ.R. 54(A) defines "judgment" as including "a decree and any order from which an appeal lies * * *." Civ.R. 58(A) states:

"Subject to the provisions of Rule 54(B), upon a general verdict of a jury, or upon the determination of a periodic payment plan, upon a decision announced, the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it upon the journal. A judgment is effective only when entered by the clerk upon the journal."

R.C. 2323.51(B) provides that a court in a civil action may, at any time prior to trial or within twenty-one days after entry of judgment, award attorney fees to any party adversely affected by frivolous conduct.

Under Civ.R. 54(A), a "judgment" is an order from which an appeal can be taken, and, under Civ.R. 58(A), "entry of judgment" occurs after the verdict or decision in a civil action. Thus, the statute refers to trial court judgments in civil actions, not to appellate judgments. Accordingly, R.C. 2323.51 does not contemplate awarding attorney fees for defending appeals of civil actions.

Consequently, we reverse the judgment of the court of appeals and grant the writ of mandamus ordering Sowald to vacate her order granting Albert's request for attorney fees. We also deny Albert's motion for attorney fees under R.C.

2323.51.

Judgment reversed<br>
and writ granted;<br>
motion for attorney<br>
fees denied.

Moyer, C.J., Sweeney, Holmes, Wright, H. Brown and Resnick, JJ., concur.

Douglas, J., concurs in judgment only.

FOOTNOTES

1. R.C. 119.092(C) has since been amended to allow state agencies to appeal awards of attorney fees. Am.Sub.H.B. No. 615, 143 Ohio Laws, Part IV, 6067, 6070.