OPINION
{¶ 1} As stated in previous opinions, this case has an extensive and contentious history with voluminous filings. Appellant, Susan A. Solér, initially retained Robert St. Clair to demand an accounting for the partnership in which she was involved, along with her mother and brother. After her mother's death in October 1988, she asked St. Clair, who also recruited attorney J. Michael Evans, to represent her in probate court during the pendency of her mother's estate. The issues in this case arose from allegations of legal malpractice by St. Clair and Evans in the representation of Solér in the probate court.
 {¶ 2} On November 30, 1995, Solér, through her counsel, appellant, James P. Connors, filed a complaint alleging breach of contract, legal malpractice, negligence and conversion against the law firm of Evans, St. Clair Kelsey, Robert St. Clair, J. Michael Evans, Charles E. Kelsey, Paul M. Aucoin and David T. Bainter. St. Clair filed a counterclaim for legal fees. Solér filed an amended complaint alleging the same causes of action against the same defendants and adding Michael A. Nieset, David A. Belinky, Randall E. Yontz, Robert C. Hetterscheidt, David S. Heier, Carol J. King and Jan L. Maiden as defendants. Connors believed these individuals were partners in the law firm based in part upon the letterhead which listed the law office of Evans, St. Clair Kelsey and each individual attorney.
 {¶ 3} Belinky and Yontz each filed a motion for summary judgment with affidavits denying the existence of a partnership and asserting that an office-sharing arrangement existed. The trial court granted these motions for summary judgment and Solér appealed. This court upheld the trial court's decision and the Supreme Court of Ohio dismissed the appeal. See Solér v. Evans,St. Clair Kelsey (1997), 80 Ohio St.3d 1477.
 {¶ 4} On October 21, 1998, Solér voluntarily dismissed her claims against all parties pursuant to Civ.R. 41(A)(1). On December 7, 1998, St. Clair's counterclaim for legal fees against Solér proceeded to trial. On January 12, 1999, St. Clair was granted a judgment in the amount of $47,823.72 with ten percent interest. St. Clair, Evans, Bainter, Kelsey and King filed motions for sanctions. The trial court found Solér and Connors had engaged in frivolous conduct and were jointly and severally liable in the following amounts: to St. Clair $54,654.81; Evans $81,799.14; Bainter $53,752.53; Kelsey $66,376.94; and King $26,710.78, for a total of $283,294.20 plus ten percent interest.
 {¶ 5} Solér and Connors filed a joint notice of appeal. This court determined that the trial court needed to redetermine the attorney fees imposed as sanctions finding that, while discovery sanctions were appropriate, any sanctions based upon the finding that no partnership existed were inappropriate because the trial court had excluded relevant evidence regarding the existence of a partnership. See Solér v. Evans, St. Clair Kelsey (Sept. 26, 2000), Franklin App. No. 99AP-1020. We certified a conflict to the Supreme Court of Ohio regarding issues other than sanctions. See Solér v. Evans, St. Clair Kelsey (2002),94 Ohio St.3d 432.
 {¶ 6} On remand, the trial court conducted a jury trial on St. Clair's counterclaim for allegedly unpaid legal fees. The jury found in favor of Solér in that she had already paid St. Clair more than the reasonable value of his services and that his malpractice proximately caused her damage that exceeded his fee claims. The trial court entered a judgment that denied St. Clair any recovery on his counterclaim for his fee. Also, on remand, on June 25, 2002, the trial court granted St. Clair a separate final judgment for 30 percent of his attorney fees, for a total of $32,792.89 as sanctions against Solér and Connors. Solér and Connors appealed that judgment to this court. In Solér v.Evans, St. Clair Kelsey, 152 Ohio App.3d 781, 2003-Ohio-2582, this court affirmed the judgment in part, reversed in part and remanded the cause finding that the trial court erred in relying solely on counsel's estimate of fees when counsel did not explain the specific fees and services which resulted from the previously adjudicated frivolous conduct.
 {¶ 7} On June 25, 2002 and October 11, 2002, the trial court conducted evidentiary hearings on the partnership issues and the measure of sanctions for any other previously adjudicated frivolous pretrial conduct. After the June 25, 2002 hearing, the trial judge orally announced his preliminary findings that Solér and Connors had engaged in sanctionable frivolous conduct by asserting vicarious liability "partnership" claims against Bainter and King but did not engage in frivolous conduct by asserting vicarious liability "partnership" claims against Evans and Kelsey. The trial court also reconfirmed the matters which it would consider at the second evidentiary hearing for the sanction motions, including: providing Evans and Kelsey an opportunity to rebut the contention that Solér and Connors had a rational basis to assert that Evans and Kelsey were St. Clair's partners, and an opportunity for Evans and Kelsey to demonstrate any reasonable attorney fees and expenses which Solér and Connors' previously adjudicated frivolous conduct caused them to incur. The trial court also directed Bainter and King to demonstrate their reasonable attorney fees and expenses to defend against Solér and Connors' previously adjudicated frivolous conduct. The trial court also provided Solér and Connors an opportunity to demonstrate that they asserted their claim against Bainter and King in good faith.
 {¶ 8} On December 5, 2002, the trial court determined that, although the purported law firm of Evans, St. Clair Kelsey was an office expense sharing arrangement, Solér and Connors had a good-faith basis to assert that Evans and Kelsey were St. Clair's partners in that purported law firm. Solér's ultimate failure to prove that Evans and Kelsey were actually partners or apparent partners did not justify frivolous conduct sanctions. The trial court also determined that Solér and Connors had no good-faith basis for a vicarious liability claim against King or Bainter. The trial court found that Evans and Kelsey failed to demonstrate with any specificity any reasonable attorney fees and expenses which Solér and Connors' previously adjudicated frivolous conduct caused them to incur apart from any fees or expenses for their defense of Solér's claims that they were St. Clair's partners or apparent partners. The trial court awarded Evans and Kelsey each $10,000 as sanctions, and King and Bainter each $35,000. Solér and Connors filed a notice of appeal and Evans and King both filed notices of cross-appeal.
 {¶ 9} Solér and Connors raise the following assignment of error:
The trial court erred by granting any attorney's fees as sanctions for frivolous conduct to appellees Carol J. King, David T. Bainter, Charles E. Kelsey, and J. Michael Evans.
 {¶ 10} J. Michael Evans raised the following issue in his brief as cross-appellant:
Whether the trial court correctly interpreted and applied this Court of Appeal's Decision in Soler v. Evans, St. Clair Kelsey (Sept. 26, 2000), Franklin App. No. 99AP-1020 ("Soler I") and this Court's decision in Wiltberger v.
 Davis, (110 Ohio App. 3rd 46 (Franklin Co. 1996) to Defendant/Cross-Appellant/Appellee, J. Michael Evans.
 {¶ 11} Carol King also raised an issue in her brief as cross-appellant, as follows:
When sanctions are awarded pursuant to Revised Code section2323.51, Civil Rule 11, or the inherent authority of the Court, does the amount of sanctions include amounts for fees spent on appellate work.
 {¶ 12} By the assignment of error, Solér and Connors contend that the trial court erred by granting any attorney fees as sanctions for frivolous conduct. Both Evans and King contend that their sanctions amounts should be higher. Solér and Connors argue that the trial court ignored voluminous other evidence demonstrating that King and Bainter were actual or apparent partners in Evans, St. Clair Kelsey. However, no transcript of the June 25, 2002 or October 11, 2002 hearings was filed in this case nor has a narrative statement of the proceedings, pursuant to App.R. 9(C), or an agreed statement, as provided under App.R. 9(D), been provided. Without a transcript, we must presume the regularity of the trial court proceedings and affirm. "The duty to provide a transcript for appellate review falls upon the appellant. This is so because an appellant bears the burden of showing error by reference to the matters in the record."Columbus v. Hodge (1987), 37 Ohio App.3d 68.
 {¶ 13} However, from the face of the trial court opinion, there is clearly an error. The opinion provides as follows:
Despite this judge's express instructions, Evans and Kelsey failed to demonstrate with any specificity: "any reasonable attorney fees and expenses which [Solér and Connors] previously adjudicated frivolous conduct caused them to incur, including their attorney fees and expenses to assert their frivolous conduct claims — without any fees or expenses for their defense of [Solér's] claims that they were St. Clair's partners or apparent partners." * * *
Kelsey's counsel testified that no more than 10% of his services addressed partnership issues. That testimony escapes credulity when most evidence suggests that those issues dominated the previous proceedings and controlled their outcome. Moreover, that opinion provides no assistance in determining what fees and expenses the frivolous pretrial conduct actually caused, unless we assume that everything that every counsel did resulted solely from that frivolous conduct if it did not relate to the partnership issues. Without any expert evidence or explanation about which services resulted from frivolous pretrial conduct, Kelsey's counsel arbitrarily argues that frivolous pretrial conduct caused him to incur 90% of all his fees and expenses. Even St. Clair (who was the principal defendant and the principal target for frivolous pretrial conduct) claimed that only 30% of his fees resulted from frivolous pretrial conduct.
After meticulously reviewing the time records in Kelsey's counsel's fee bills before the appeals which led to this remand, this judge can identify no more than $7,306.25 (83.5 hours @ $87.50/hour) which could have resulted from frivolous pretrial conduct that the previous judge listed in his factual findings. In fact, the time records frequently intermix the time for response to that frivolous conduct with time unrelated to that conduct, so the total could well be significantly less.
* * *
Here again, after meticulously reviewing the time records in Evans' counsel's fee bills, this judge can identify no more than $6,500 (65 hours @ $100 per hour) that could have resulted from frivolous pretrial conduct which the previous judge listed in his factual findings. Here again, the time records frequently intermix the time for response to that frivolous conduct with time unrelated to that conduct, so the total could well be significantly less. For reasons similar to the finding for defendant Kelsey's sanctions, this Court now determines that defendant Evans should recover $10,000 from plaintiff Solér and her counsel Connors as frivolous conduct sanctions.
* * *
Frivolous conduct by plaintiff Solér and her counsel Connors required defendants King and Bainter to defend against patenetly [sic] groundless claims. The assertions that these two defendants were liable were not warranted under existing law; cannot be supported by a good faith argument for an extension, modification, or reversal of existing law; and cannot be supported by a good faith argument for the establishment of new law. R.C. 2323.51(A)(2)(a)(ii). Accordingly, they may recover reasonable fees and expenses for that defense, and the Court may also permit their recovery for reasonable fees and expenses in asserting that motion. For this purpose, the Court follows the same guidelines here as it followed for sanctions in favor of defendants Kelsey and Evans.
With the support of an independent expert witness, defendant King's counsel demonstrated that defendant King's reasonable fees and expenses to defend against that claim were approximately $20,700, and that the [sic] her fees and expenses to assert the sanctions motion were approximately $23,750 plus $4,750 for an expert witness fee. Believing that the remand orders in this case did not limit this judge's discretion to determine appropriate amounts for the sanction orders, he now determines that defendant King should recover $35,000 from plaintiff Solér and her counsel Connors as sanctions for their frivolous conduct.
With only his own testimony, defendant Bainter's counsel asserted that his fees and expense to defend against that claim were more than twice the amount that defendant King required to defend against a comparable claim, and that his fees and expenses to assert his sanctions motion were significantly more than the fees and expenses that defendant King required to assert her comparable sanctions motion.
Hearing testimony demonstrated that Bainter's counsel's billings repeatedly charged for activities he did not perform. Bainter was a defendant in the initial Complaint, and King defended herself without counsel for a short time after the plaintiff added her as a defendant. On the other hand, Bainter's counsel did not incur a substantial expert witness fee to assert his sanctions motion. Otherwise, this judge fails to understand why defendant Bainter's expense to defend the suit or his expense to assert his sanctions claim should be appreciably different from defendant King's reasonable expense to accomplish the same purposes. Therefore, this judge now determines that defendant Bainter should likewise recover $35,000 from plaintiff Solér and her counsel Connors as sanctions for their frivolous conduct.
 {¶ 14} While the trial court meticulously reviewed the time records in this case, it is clear from the opinion that the judge could identify no more than $6,500 for sanctions for Evans and also stated that the time records mixed the time for response to that frivolous conduct with time unrelated to that conduct, so the total could well be significantly less and yet the court awarded $10,000. The court also indicated that no more than $7,306.25 could be identified as sanctions for Kelsey, and that the total could be less but also awarded Kelsey $10,000. If the time records indicate no more than $6,500 or $7,306.25, there is no basis for awarding Evans and Kelsey each $10,000. Likewise, there is no transcript to determine whether Bainter and King received appropriate amounts. Solér and Connors' assignment of error is well-taken.
 {¶ 15} For the foregoing reasons, Solér and Connors' assignment of error is sustained, Evans and King's cross-assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Petree and Watson, JJ., concur.